Mr. Russell. May it please the court, my name is Dylan Russell from Hoover Slovichek in Houston, Texas. There is two primary issues before the court. First, liberally construing the pleadings and strictly construing the total pollution exclusion clause against Evanston. Is there at least one claim for property damage or bodily injury caused by the installation of the spray polyurethane foam or SPF, the presence of the SPF, or physical contact with the SPF? The court finds that the answer to that question is yes, that there is at least one claim that Evanston has a duty to defend and the court should reverse and render judgment finding that Evanston has a duty to defend in the underlying Camarado case still pending in state court in Connecticut. If the court finds the answer to that first question is no, then the court reaches the second primary issue, which is this court's irreguious exception to the eight corners analysis. As I think Judge Barksdale was on the panel of the first Fifth Circuit opinion that adopted that irregious exception, which was the OOIDA v. Williams case. But addressing the first issue of whether there is a claim that would be covered, not withstanding the total pollution exclusion clause, I think the court just needs to look at the pleadings in the underlying complaint. Specifically, the pleadings refer to SPF being in a, quote, defective and unreasonably dangerous condition, that it was unsafe and dangerous, that the SPF can result in property damage, that the SPF would dry within a few minutes time and was safe. At least that was the allegation that the Camarados made as to representations made to them. However, they found out later, as they alleged, that there was at least a 24 to 72 hours. They specifically alleged that the property damage, damages were caused by the product. And there are very few instances in the complaint where the term cause, that word is even used. But when it is used, and this is on page 1062 of the record, it refers specifically to the product, which it defines as the spray polyurethane foam product, as that, which would Don't, when you read all the complaint, isn't it clear that the plaintiffs were all in one section of the house and the work was being done in another section of the house? Not exactly, Your Honor. There are three plaintiffs in the underlying case. There's Mr. Camarado, Mrs. Camarado, and Mrs. Camarado's mother, Mrs. Schlegel. And Mrs. Camarado actually, this is in the underlying pleadings, she actually witnessed the installation occurring in the addition. That's in section, I'm sorry, page 1034 of the record. She observed the workmen present in the area of the addition while the spraying was going on. So she was physically in the addition. Does that mean she was in the area where the work was being done? I mean, could she observe it through an open door or something? She could have observed it from somewhere else, but at least from the pleadings that we can tell, which are somewhat limited as far as the detail, it was clear that she was in that room. But even if she was just observing from afar but could see from a door, there are other allegations where Mrs. Camarado and specifically every day, there was a five-day installation, every day after the installation, they were done with their work, Mr. Camarado would come back and for an hour each day, it says in the pleadings, Mr. Camarado returned to the house every night for at least an hour to inspect the work performed by the defendants during the day. This is a Doesn't this get into your desire to present extrinsic evidence? Because if he was inspecting the work, that simply could mean he could stand there and look at it from 20 feet. Well And the only way he could have been harmed by the foam would have been the fumes from the foam. I mean, reading of the complaint. Well, I think reading of the complaint, first of all, this does go to the personal injury claim. I think our best argument as to just looking at the eight corners of the pleadings is that we have property damage. And similar to the presence of asbestos in a claim, the presence of an unsafe and dangerous SPF is sufficient to create a property damage. In fact, if I could just The property was in another part of the house that the fumes would have reached. I don't know how it could have affected it, but that's the claim. Well, the case It's not like the foam, the SPF, somehow was on the furniture in the other rooms. Well, there's a difference between the property damage to the structure, the real property, and the personal belongings. I think from the allegations, the personal belongings were only affected by vapors. But it's the structure itself, the fact that now permanently there is SPF that they allege is dangerous attached to the structure of this house, that that creates a real property damage, similar to as if they had installed asbestos products. And I think, Justice Barkdale, in your panel opinion that you were on the Mid-Continent Academy development case, in that case on page 320, the Court states, unintended construction defects constitute allegations of property damage under CGL policy sufficient to trigger an insured's duty to defend. Here in the pleadings, it states, the underlying allegations, that you have an unreasonably dangerous condition. So the fact that you have a defective product in the house I'm sorry, go ahead. I'm sorry. No, you go ahead, and I'll follow up. I was going to say, the fact that you have a defective product, unsafe in and of itself, the SPF, that's how it's defined in the complaint. The fact that you have a dangerous product is enough by itself, whether there are vapors or not, doesn't matter. It's the fact that you have a defective SPF in the house is sufficient under the Academy development case that creates a property damage, as the Comrades allege. They say as a result, specifically, they say as a result of the presence of the product in their home, this is page 1064 in the record, that the plaintiffs have suffered and will continue to suffer property damage, including, but not limited to, the loss of their home. So the fact that they have this in there, and I should point out, this is something that was not in the briefs, but to the extent I have suggested and relied on some cases that refer, that analogize this, you know, unsafe SPF to asbestos, the Texas legislature in section 149.001 of the Civil Practice and Remedies Code defines an asbestos claim a number of different ways, including, quote, property damage caused by the installation, presence, or removal of asbestos. And I think that's essentially what has been claimed here as to the property damage by the Comrades. But getting to, Judge Barksdale, your question about the difference between the property damage and the real property damage claims. Here, I think there's enough facts for the court to at least reasonably infer from the pleadings that there was physical contact with the SPF. Now, there's no express. Contact by the husband and wife? By the husband and wife, yes. And that's what you wanted the court to allow extrinsic evidence about? If the court were not to infer that that's what happened, then yes, we wanted the court to imply the irregular exception to allow the undisputed extrinsic evidence that both Mr. and Mrs. Comrado physically touched the foam during the instances where they would come in after the installation was done, after each day, and physically feel the foam. And Your Honor, Judge Barksdale, you said that you asked about, well, inspection, what does that mean? The Oxford Dictionary defines inspection to examine something to ensure it reaches an official standard. And I don't know what Mr. Comrado's qualifications are, but to the extent he's inspecting foam that's open, sprayed between the rafters, if you have an hour five times or four, I guess it was four nights, every night after the installation, to the extent they've alleged that he inspected the foam, I think it's reasonable to infer that he touched it. If you were inspecting fruit to make sure it was in good enough condition to put on the grocery stand, I think you can infer that you would touch it. And I think, of course, we know from the undisputed deposition testimony that, in fact, during those periods of time that he was inspecting the foam. I think it's also important that the court, for purposes of the duty to defend analysis and the fact that the court has to, any facts that are undisputed to the extent there's any question you must find in favor of the shouldn't, the court shouldn't be making a sort of a scientific assumption that merely because you have respiratory distress that that could only result from inhalation of vapors. And we've cited some authorities in a footnote of our brief, and I think it's even mentioned in one of our best cases, the Clarendon case, that's the wet cement case from Judge Atlas in the Southern District, that physical contact with the wet cement and the Clarendon case could have resulted in respiratory illnesses, just as the footnote cases that we cited in our brief. So would you have respiratory problems without inhaling something? I'm not a doctor, but I did refer to a case, the one example case is the, this is U.S. versus Gulf Park Water Company, this is Southern District of Mississippi, 14 Federal Supplement 2nd, 854, they're the United States expert in that case, Dr. Ferry, his opinion, or I'm sorry, his opinion testimony in that case was that simple contact through bathing in, I believe it was marine waters that had sewage affluent in it, was sufficient to cause respiratory distress. The same would apply, we gave, there was another example case that we gave where the testimony in that case was that physical contact with food allergens, I mean, I'm sure the Court is aware of children these days have lots of peanut allergies, even touching the peanut can cause someone's throat to close up, and we, there's certainly no allegations that suggest whether that happened one way or the other, but whether it was by physical contact or the inhalation of vapors, but I think the Court in this context has to construe the pleadings in favor of coverage by finding that that respiratory distress could have been caused by something other than inhalation, and I think that's what is important in this case primarily, is to focus on the fact that you only focus on, it's not that there are claims that are clearly excluded to the extent vapors were inhaled, those would involve the requisite movement necessary for the total pollution exclusion to apply. The question is whether one single claim that does not involve that requisite movement, and we think there's enough facts here to suggest that that happened and therefore there is a duty to defend. However, if the Court finds that the allegations are not sufficient to provide that there was property damage from the SPF itself, its presence and its installation, or that there was bodily injury resulting from the SPF or the opportunity at least to have physical contact with the SPF during the inspections that were done, then the Court would apply the irrigation exception, and I think where the trial Court got that wrong was the Court basically said, well, look, there's all these allegations in here about vapors, and it should be noted when you read that there's only two paragraphs in the summary of facts section that even use the word vapors, and the summary of facts section is paragraphs 1 through 49. In those two paragraphs that use the word vapors, it's talking about the failure to warn about the fact that vapors might be emanating from the SPF after it's being installed, but there's no allegation that the vapors actually caused the damages. In fact, in the list of paragraphs that Judge Rosenthal thought were relevant to the duty to defend analysis, she excluded paragraph 49, which is the last paragraph in the summary of facts section, and paragraph 49 is the only allegation that actually says that part of their damage is that they're seeking our costs to investigate the damage causes. So it's clear from these express allegations, even in the summary of facts section that Evanston believes was the only sections of facts relevant to the duty to defend analysis, they don't even know what the cause was. So I think it's reasonable for this Court under the duty to defend eight quarters analysis to find that it's not clear what the damages causes were. So I think it's inappropriate to assume that the personal injury claims, the bodily injury claims were only caused by vapors resulting in respiratory distress. Other than the fact that the owner of the house inspected, and you say we should infer from that that he perhaps touched it, is there any other allegations about any of the other plaintiffs inspecting or touching? There's only three plaintiffs, and only two of them would have had the opportunity. So I think as to Mrs. Schlegel, all of the allegations about Mrs. Schlegel were that she was in the existing home and wouldn't have had an opportunity. What about the wife? Well, the wife did inspect. According to the wife, she was, this is page 1036 of the record, the Comrados, both of them, returned to the house periodically over the next four days to check on the progress of the insulation installation. And then, of course, more specifically, Mr. Comrado would inspect for an hour every night the work. But as to the total, I'm sorry, the irregular exception, basically what Judge Rosenthal did was say, well, look, there's claims here about vapors, so my analysis is done. The exception doesn't apply. But whether there were claims for vapors really goes only to whether or not there was a conflict in the pleadings. And I think that when you read all the cases that say, well, there's a vapor or there's some kind of gas being emitted and there's damage, the total pollution exclusion applies, case is over. What Judge Rosenthal should have been doing is looking at are there other claims that don't involve vapors. And so, in other words, when she said, well, there's claims for vapors, therefore I don't need to apply the exception, what she should have said, well, is if there's claims for vapors, is there facts that would make a conflict to suggest that there was physical contact? And there are no, it's, they even say, both the Evanston briefing and Judge Rosenthal make clear that there are no facts suggesting expressly that they physically touched the phone. Therefore, the irregular exception applies, because there's no conflict in the allegations. And if I could just, I guess my time is up, I'll wait for the rebuttal to address one more point I want  Thank you very much. Thank you. All right, sir. Tell me how you're going to ask your name? Yes, Justice Davis. I'm Mark Wojciechowski on behalf of Evanston Insurance Company here today to address the issues at hand for this court. In order for LAPOLA to create the duty to defend based upon these pleadings, or this particular pleading, the second amended complaint, LAPOLA has to butcher both the eight corners rule and the exception to the rule. Before getting to the exception, I think it's very important to talk about the rule itself. And Justice Barksdale, the most recent decision is one in which you've participated coming out of this court, the Testmasters case. And I think it's very instructive to look at that case and look at what the rule's called. It's called the eight corners rule, because you're going to have to look at the four corners of the pleading, not in isolation, four corners of a paragraph or the two sides of a sentence and take it out of context. You've got to read all the pleading allegations in their entirety. And that's what Testmasters did. The issue was if it alleged trade dress, then there was going to trigger coverage under the State Farm Policy. If it did not, then you only had a trademark infringement allegation where no coverage would exist. And what Testmasters urged this court to do was to read a particular sentence concerning a website allegation out of context from the rest of the pleading. And that's kind of what Lepola is doing here. It's urging this court to read conclusions stated in the legal theory sections of the complaint out of context to establish their injuries from some source other than vapors. And that would be improper, such as in Testmasters, where the court went on to say that suggesting that you just take this one allegation and read it out of context from the rest of the counterclaim in that case would be improper, just like Lepola is urging here. Another thing which is important is there are 14 pages and 49 paragraphs under the factual allegation section of this particular complaint. And in those paragraphs and on those pages, the comrados state with specificity how did their damages occur throughout this whole home. And when they're talking about how their damages occur, they're talking about seepage and migration of vapors coming from this insulation damaging the structure of their home and because, as they have stated in their complaint, the vapor barriers set up were not done properly, it migrated into the other parts of the home where they were living. And when you read the complaint in its entirety, you can see what's causing the damage. That's the vapors. Now the part of the complaint that Lepola wants to hang its legal hat on are those allegations and those legal conclusions in their causes of action section. In those causes of action section, they talk specifically and they address in summary fashion, we sustain personal injury and property damage. That's the conclusion that they draw. Well, you really can't look towards that because this court a few years ago had in front of it a case called Evanston v. Legacy of Life. And legal conclusions in summary of factual allegations contended that, you know, body parts were property and they needed the property characterization was an element to their cause of action. Just like in this case, the characterization of their product liability cause of action. And one element of strict product liability under this particular state statute, which the Comorados have sued, is they must sustain personal injury and property damage. Let me ask you this. What do you say to counsel's argument that the underlying complaint did allege that the house, the structure is dangerous because of presence of the property, because of the odor, whatever. I don't know what else. But do they allege that? They allege as an element of their strict liability damage claim that they have property damage in the home. But when you read that in isolation, yes, you could argue that the court, by straining interpretation of this complaint, that its mere presence is, quote, property damage. But you can't do that because Testmaster tells us you have to look at all the entirety of the complaint and look at what is the factual origin of the conclusion there's property damage. And that's what Evanston v. Legacy of Life tells us. You can't just clearly look at that conclusion that there's property damage. How did the alleged property damage get there? And that's when you must go back and look at these 14 pages of allegations in these 49 separate paragraphs, and all of them clearly say that the property damage got there due to the migration of the vapors and the presence of the vapors. The presence of the vapors and the presence of the migration into that part of the home in which they're living. They're very detailed about that in their factual allegations section. What they're not detailed about is when they raise the conclusion on their product liability claim. And this court has repeatedly said, following Texas Supreme Court precedent, that we can't look at just these legal conclusions in summary, fashion, and form. We have to look at what are the factual origin of the damages, those property damages, and it is these vapors. They don't allege that the house is dangerous because of the presence of the product? No, they allege in the legal conclusion, they draw a conclusion that the house is dangerous due to the existence of the LaPolla product. But the LaPolla product, what is its existence? It's the product emanating the vapors that has created the damage when you go back to the factual allegations. And that's where LaPolla is getting it wrong. It wants this court, and it argued the same thing at the district court level, that you only look at these conclusions stated in their legal theories, and you don't read the complaint in its entirety. And this court has instructed us just in 2014 that you've got to look at it in its entirety. Now going to the? As I understand the complaint, and correct me, for example, I've looked at a couple of these paragraphs where they say they didn't put up a proper vapor barrier and that sort of thing, allowing these vapors to spread throughout the house. The only causation apparently alleged in the complaint, for want of a better term, is the vapors. It's not the fact that they never say because the product sits in our home, it's immediately dangerous. They basically say it's dangerous because the vapors that emanate into the rest of our home are  dangerous. And that's exactly true. Because what you have in this complaint is you have one set of damages for which the comoratos that give rise, you have one set of damages. So you look at the origin of those damages, and that's what you're supposed to do when conducting this coverage analysis. The fact that you may have numerous legal theories pled to recover those same damages is irrelevant. The fact that they have pled certain negligence claims and misrepresentation claims and construction defect claims against these contractors, the damages that they're seeking are the same that they're seeking from LAPOLA, and that's the property damage and the personal injury damages, and then you've got to see how were those caused. You have concurrent causation of these single damages. Now switching to the eight corner rule exception that LAPOLA is urging. That is being... I know in your brief you argue that there's no coverage for release of the...for spraying the product on the wall or wherever they were putting it. It has to seep or vapors from it might have to escape to go into another room. Where do you get that from? Am I wrong about that? You're not wrong about that, Justice Davis, because in the total pollution exclusion itself, which is included in this policy, it uses the language here. It says it excludes bodily injury and property damage which would not have occurred in whole or in part but for the actual alleged or threatened discharge, dispersal, seepage, migration, release, or escape of pollutants at any time. When you spray insulation on the wall, isn't that dispersal of a pollutant? That is dispersal of the pollutant. Only if it's...not if you're spraying it and not if it remains where it's supposed to be. And if you look at this Court's opinion in the Noble case, Noble Energy v. Bituminous 529 Federal 3rd 642, that seems to be the seminal case on the pollution exclusion and coincidentally it was decided at the trial court level by Judge Rosenthal who decided this case. And it addresses the migration or the movement of the pollutant. It basically has to be somewhere where it shouldn't be. And that's exactly what the Cameratos have alleged here. And switching back to the exceptions to the Eight Corners Rule that Lopolo is urging this Court to implement in order to trigger a duty to defend where one does not already exist. The Eight Corners Rule just does not apply. The reason being there are three general requirements as this Court has noted in Ace American v. Freeport that one, first it has to be impossible to discern from the pleading allegations what's going on. Second, you can't have overlap between the factual allegations. It has to concern only coverage. It cannot concern both coverage and liability. And third, you cannot have the extrinsic evidence contradict something in the pleading. What we don't have here is one in three. As this Court noted in the Star-Tex decision in 2014, which Justice Dennis was on that panel, that in that case you had a one or two sentence pleading allegation from the trial court below and this Court said you cannot discern what factual allegations are giving rise to this dispute. Therefore, it is necessary for us to go outside the pleadings. Unlike the present case, you have 14 pages and 49 paragraphs of factual allegations where you can easily discern because the camaradas have pled over and over and over that it was the migration of the vapors from where they should have been kept in the renovations to where they went into the living space. I guess you're saying that if the house is damaged or dangerous because of the insulation that was sprayed on the wall, the insulation is where it should be so that would not be pollution that would? If that was the only allegation in the case and that was a factual allegation as opposed to appearing as a legal conclusion in a legal theory portion of the complaint and they allege both factually and draw the conclusion. For instance, factually, they contend that factually what we have here is they've sprayed encapsulated insulation which now has dried and that insulation as was designed is an unreasonably dangerous product and now we cannot live in our house period and it has damaged our house because it was sprayed and left in the condition for which it should be, then that would not be excluded from by a total pollution exclusion because it's where it should be, it's sitting there, it's encapsulated. But that's not what the pleading says. That's not a reasonable construction of a pleading. There is nothing in the factual allegations that tend to even suggest remotely that that's what the comrades are complaining about. When you read as Test Master says, the pleading in its entirety and you're not taking out of context those statements. So, getting back to the exception to the rule, the eight corners rule that LaPolla advocates, we've already talked about how it is very possible to discern what the comrades are saying here and when you do discern it, you can tell they're talking about the vapors. Very interesting and when you draw a comparison to Test Masters, the one thing the comrades keep saying and it's contradictory is that there was some touching or contact and that's totally contradictory to what's in the complaint because the only thing that they complain about in terms of bodily injuries or personal injuries are the respiratory distress caused by inhalation of the fumes and as the court said in Test Masters, the words trade dress were never used in the Test Masters complaint that this court construed. Similarly, the words touching and contact don't appear in the 50 some odd or in the 30 some odd pages of the comrades complaint. And so, if you're going to indicate that it was touching or contact that created these injuries, that's directly going to contradict the pleading allegations that it was respiratory distress caused by vapors. Therefore, the exception to the rule cannot be applied in this case. Given the fact that this case involves a very simple, direct application of the complaint of the Eight Corners Rule upon which the district court relied, there's little more that I have to say and unless this panel has any other questions of me, I would return the balance of my time to the court. Okay, thank you very much. Thank you. Okay, Mr. Russell, back to you. Thank you. Evanston has just conceded that if the product sitting where it was intended to be placed, the product itself, the SPF, as defined by the comrades in their pleadings, that if it is where it is intended to be and has caused bodily injury or property damage, whether that be real property or personal property, that the total inclusion exclusion doesn't apply. That's precisely what the comrades alleged here. They specifically alleged that the product itself, as they defined it in their pleadings, caused property damage, caused personal injury, and therefore, on a liberal construction of the express Eight Corners of the pleadings and the policy, Evanston has a duty to defend. That should be the end of the question. As I understand the complaint, they're saying the product which is sitting in Part A of our home has done extensive damage to parts other than Part A, to Parts B, C, D, and E, both property and personal injury, and the only connector is where they say it's these vapors which were allowed to escape into the house because there wasn't a proper vapor barrier, et cetera, et cetera. Well, Judge, I think this case is different from a lot, almost all of the cases that go against us, so to speak. In other words, this case is similar to the, very similar to the Doe Run case and the Clarendon case. First of all, the one difference is there are two potential causes for damages in this case. One is the vapors, undisputed. Those are excluded. That's not the question. The question is are there other claims that would not involve the requisite movement that counsel concedes is required for the total pollution exclusion to preclude coverage. So here there are claims. If you read the allegations, not only in the fact section, but the allegations that even Judge Rosenthal agreed were relevant to what is the origin of damages, that those allegations include damages caused by the product, not by vapors from the product. You won't see the word vapor anywhere in the one single count asserted against LaPolla in this case, which is count 17. And I think it's also important that the Court apply the Rhodes case from this Court, 719 F. 2nd. 116, where the Court said whether a complaint pleads in the alternative or alleges more than one cause of action, the insurer is obligated to defend as long as the complaint alleges at least one cause of action within the coverage policy. So here we have one— But what's the difference between allegations and claims? Well, I'll give an example. Don't you agree that you have to read the— I'm out of time. Can I answer your Court's question? Don't you agree that you have to read the allegations, the factual allegations, not how they are couched in legal claims? Well, I agree with that, Your Honor. However, I believe that the count 17 includes not just legal conclusions, like, for example, the conclusion that under the Connecticut Products Liability Statute that LaPolla is a product seller, but it includes allegations that are found nowhere else in the summary of facts. And it is only that as a summary. So the facts that are included in the count section are in addition to those that were incorporated from the summary of facts sections into the count section. If I could make one other quick point. Okay. Thank you. Thank you, Your Honor, for your time. Thank you very much. We have your case, Counsel.